Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Jesse Helems

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JESSE HELEMS, *on behalf of all those similarly situated*,

          *Plaintiff,*

*v.*

GAME TIME SUPPLEMENTS, LLC dba RSP NUTRITION, *a Florida corporation,*

          *Defendant.*

No. **'22 CV 1122 L    AHG**

**CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

---

Jesse Helems ("Plaintiff"), individually and on behalf of others similarly situated, by and through undersigned counsel, brings class action claims against Defendant Game Time Supplements, LLC dba RSP Nutrition ("Defendant" or "RSP Nutrition") and with personal knowledge as to his own acts and after investigation of counsel as to the acts of others, states:

### SUMMARY OF THE ACTION

1.    Plaintiff brings claims under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201, Fla. Stat. *et seq.*; the California Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

2.      This action arises from Defendant's deceptive trade practices in the manufacture, labelling, and sale of "pre-workout" nutritional powders called AminoLean ("the Product"). These dietary supplements are meant to boost energy and encourage muscle growth, workout recovery, and weight loss.

3.      RSP Nutrition states on the front and back labels of AminoLean, and in advertising materials, that these Products contain zero calories per serving. Plaintiff—a "Spartan" athlete who lost more than 150 pounds through careful, intentional use of dietary supplements—purchased AminoLean to assist with his weight maintenance and muscle growth goals.

4.      AminoLean's labels and advertising materials are purposefully deceptive. In fact, these Products actually contain between 20 to 30 calories per serving, as measured by all of the relevant methods that FDA uses to estimate caloric content. *See* 21 CFR § 101.9(c)(1)(i). For the 70-serving container of AminoLean purchased by Mr. Helems, that amounts to more than 2,000 extra calories.

5.      Defendant makes deceptive statements and omits material relevant information from its labels and advertising material in order to deceive and entice consumers who are seeking low-calorie products for weight loss and maintenance. Defendant chose, and continues to choose, financial gain at the expense of consumers by concealing the actual caloric content of AminoLean from consumers who, like Mr. Helems, purchased what they believed was a zero-calorie Product.

**PARTIES**

6.      Plaintiff Jesse Helems is and at all times relevant was a citizen of the state of California, domiciled in San Diego. On or about May 13, 2022, Helems ordered RSP Nutrition's AminoLean pre-workout powder, blackberry pomegranate flavor, from Amazon.com (Order No. #113-3898233-6890636) at a total cost of $45.22 inclusive of tax.

7.      Mr. Helems purchased and intended to use AminoLean in order to maintain the substantial weight loss he achieved in 2016, when he dropped 150 pounds (out of 300) through cardio-based fitness and, especially, careful tracking to maintain a caloric deficit every day. After losing an additional 15 pounds to get to 135, he decided to add lean mass through strength training supported by controlled caloric intake, using pre- and post-workout supplements such as AminoLean.

8.      Mr. Helems' long and arduous weight loss and fitness journey has been accomplished in large part by researching supplements, carefully evaluating their label claims, and carefully measuring his caloric intake. He relies on supplements' label claims and consumes foods, drinks, and supplements with intentionality.

9.      Defendant Game Time Supplements, LLC dba RSP Nutrition is a Florida limited liability company with its principal place of business in Miami Beach Gardens, Florida.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

11.     Plaintiff seeks to represent Class members who are citizens of states different from the Defendant.

12.     The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

13.     In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

14.     In the alternative, the Court has jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000 exclusive of interest, fees, and costs.

15.     This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

16.     Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district, including Plaintiff; knowingly directing advertising and marketing materials concerning the Products into this district through wires and mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

17.     Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

18.     Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

19.     Plaintiff's losses and those of other Class members were sustained in this district.

20.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

21.    Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over defendant.

## FACTUAL ALLEGATIONS

### A.    RSP Nutrition's Zero-Calorie Statements

22.    On the front and back labels of the AminoLean Product purchased by Mr. Helems, RSP Nutrition states that the Product contains zero calories:




23.    On its own website, RSP Nutrition touts the "Natural Weight Management" benefits of AminoLean and states that the lack of calories in the Product makes it an "extremely clean product for any diet" (*see, e.g.,* https://rspnutrition.com/collections/pre-and-post-workout/products/aminolean-fruit-punch) (last visited July 15, 2022):

> A COMPREHENSIVE, NATURAL WEIGHT MANAGEMENT SUPPLEMENT - A scientifically formulated blend of Conjugated Linoleic Acid (CLA), L-Carnitine Powder, Green Tea Extract, and Green Coffee Bean promote natural weight management to help maintain a lean physique year-round
>
> ZERO SUGARS, CARBS, OR CALORIES - AminoLean has 0 sugars, 0 carbs and 0 calories; making it an extremely clean product for any diet. Additionally, it does not contain any gluten in its ingredients.

24.    Since receiving a demand from the undersigned regarding this claim, Defendant changed its website text to remove the zero-calorie claim.

25.    On third-party websites where the Product is sold, including Amazon.com, Wholefoods.com, and Walmart.com, RSP Nutrition states that the Product contains zero calories and explicitly touts its benefits, including "promoting natural weight management and fat loss," and the fact that it "contains zero sugar, carbs, or calories making it a guilt-free, keto friendly all-in-one energy, weight management, and amino acids solution."

**B.    FDA's Five Methods and Defendant's Deceptive Statements**

26.    Regulations of the U.S. Food and Drug Agency ("FDA") permit the use of any of "Five Methods" of determining the caloric content of foods. *See* 21 C.F.R. § 101.9(c)(i)(1). As a "Third Group" nutrient, or one associated with health concerns, the actual calories per serving of the Product cannot 20 percent of the label claim. *Id.* § 101.9(g)(5).

27.    The FDA provides a clear example of labeling calories for an amino acid-based supplement at https://www.fda.gov/media/99158/download. This FDA example, as pictured

below, displays approximately 4 grams of total amino acids, which would approximate 16 calories and is listed as 15 based on pertinent rounding rules:

## Supplement Facts

Serving Size 1 Tablet
Servings Per Container 50

**Amount Per Tablet**

| | |
|---|---|
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

* Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

28. RSP Nutrition lists the "Amino Acid Blend" in the Product as 5 grams per serving as displayed below:

Amino Acid Blend:                                    5 g    **
Taurine, CarnoSyn® Beta-alanine, L-Glutamine, L-Arginine,
L-Leucine, L-Citrulline, L-Isoleucine, L-Valine, L-Tyrosine,
L-Histidine HCL, L-Lysine HCL, L-Phenylalanine, L-Threonine,
L-Methionine

29. Based on the FDA guidance and consistent with the example provided, the amino acid blend in the Product alone constitutes 20-25 calories per serving. This 20-25 calorie per serving estimate does not include the calories provided by the "Weight Management Blend" (1.5g) or the ingredients listed in the "Other Ingredients" (approximately 2.2g).

30. This analysis is consistent with bomb calorimetry analysis that was conducted by an independent laboratory at the direction of Plaintiff's counsel. Bomb calorimetry is one of the FDA-approved "Five Methods."

31.     That analysis revealed that the Product contains 1,540 kcal per pound, or about 2,140 calories in the entire container. These results establish that the Product contains about 30 calories per serving.

32.     RSP Nutrition's zero-calorie representations are thus in direct violation of FDA guidance for labeling calories when present at levels at or above 5 calories per serving, at 5 calorie intervals up to 50 calories, and at 10 calorie intervals above 50 calories. *See* 21 C.F.R. § 101.9(c). The FDA requires manufacturers to declare "total calories" in the Supplement Facts panel "when they are present in measurable amounts," defined as "an amount that exceeds the amount that can be declared as 'zero'" pursuant 21 C.F.R. § 101.9(c). *See* https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling#4-6..

33.     Moreover, in accordance with 21 C.F.R. § 101.60(a)(4), dietary supplements may only make zero-calorie claims when there are less than 5 calories per labeled serving.

34.     Under any of the FDA's relevant Five Methods, the Product is mislabelled, even after subtracting grams of protein to account for indigestibility.

35.     Defendant's advertising deceives consumers, such as Plaintiff, by making the same deceptive representations regarding calorie content.

**C.     Substantial Similarity and Plaintiff's Reliance**

36.     These Products are formulated into five different flavors: Watermelon, Blue Raspberry, Fruit Punch, Blackberry Pomegranate, and Grape.

37.     All of these Products are made with a base formulation that includes a similar "Weight Management Blend," "Amino Acid Blend," and "Energy and Focus Blend."

38.     All of the Products purport to be zero-calorie.

39.    These Products are offered for sale on the Defendant's website for the same price: $24.97 for a 30-serving container and $44.97 for a 70-serving container.

40.    The Products also use similar labels, and the labels present the zero-calorie claim in a similar manner.

41.    Because of these similarities, the resolution of the asserted claims will be identical as between the purchased and unpurchased Products.

42.    Because both the products and alleged misrepresentations are substantially similar, Plaintiff's claims related to the Products that he purchased are typical of the claims available to all purchasers of the Products. As such, Plaintiff is an adequate class representative for a class of purchasers of all of the Products, regardless of whether Plaintiff purchased every flavor of the Products.

43.    Plaintiff reserves the right to amend this Complaint to add further products that contain similar label misrepresentations as testing continues.

44.    Labels are the chief means by which food product manufacturers convey critical information to consumers, and consumers have been conditioned to rely on the accuracy of the claims made on these labels. As the California Supreme Court stated in a case involving alleged violations of the UCL and FAL, "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label." *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 328 (2011).

45.    Given the Defendant's labels, consumers including Plaintiff would reasonably understand Defendant's statements to mean that each Products contained zero calories as advertised and represented. These statements were false.

46.    Consumers including Plaintiff would reasonably rely on Defendant's statements such that they would not have purchased the Products from Defendant if the truth about the

Products' caloric content were known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading.

47.    Consumers including Plaintiff especially rely on the "zero calorie" label claims made by food product manufacturers such as RSP Nutrition, as they cannot confirm or disprove those claims simply by viewing or even consuming the Product.

48.    Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

## CLASS ACTION ALLEGATIONS

49.    Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons nationwide who purchased the Products within four years prior to the filing of this Complaint; and a California subclass of all persons within the state of California who purchased the Products within four years prior to the filing of this Complaint.

50.    Excluded from the Class and Subclass are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

51.    Plaintiff reserves the right to alter the Class and Subclass definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

52.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as

individual Class and Subclass members would use to prove those elements in individual actions alleging the same claims.

53.     **Numerosity – Rule 23(a)(1)**: The size of the Class and Subclass is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are tens of thousands of Class members geographically dispersed throughout the nation and the state of California.

54.     **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class and Subclass. These questions predominate over any questions that affect only individual Class and Subclass members. Common legal and factual questions and issues include but are not limited to:

    a.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products is misleading and deceptive;

    b.  Whether a reasonable consumer would understand Defendant's "zero-calorie" claims to indicate that the Products contained zero calories per serving, and reasonably relied upon those representations;

    c.  Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class and Subclass members;

    d.  the proper amount of damages and disgorgement or restitution;

    e.  the proper scope of injunctive relief; and

    f.  the proper amount of attorneys' fees.

55.     Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class and Subclass. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that

predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

56.    In short, these common questions of fact and law predominate over questions that affect only individual Class members.

57.    **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class and Subclass members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

58.    Specifically, all Class and Subclass members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class and Subclass members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class and Subclass members.

59.    There are no defenses available to Defendant that are unique to the named Plaintiff.

60.    **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class and Subclass because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

61.    Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and Subclass and have the resources to do so.

62.    **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a. the damages individual Class and Subclass members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class and Subclass members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single court;

c. the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d. the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class and Subclass members or would substantively impair or impede their ability to protect their interests.

63.     Unless the Class and Subclass are certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

64.     Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell the Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class and Subclass will continue to be misled, harmed, and denied their rights under the law.

65.     **Ascertainability**. To the extent ascertainability is required, the Class and Subclass members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

66.     Defendant has acted on grounds applicable to the Class and Subclass as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class and Subclass as a whole.

## COUNT 1
## VIOLATION OF FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, CHAPTER 501, PART II, FLORIDA STATUTES
### Nationwide Class

67.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

68.     Section 501.204(1) of the Florida Statutes provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The provisions of the Florida Deceptive and Unfair Trade Practices Act shall be "construed liberally to promote the protection" of the "consuming public and legitimate business enterprises from those who engage in … deceptive[] or unfair acts or practices in the conduct of any trade or commerce." § 501.202, Fla. Stat.

69.     Defendant was, at all times material to the allegations herein, engaged in "trade or commerce" as defined by the Act. § 501.203, Fla. Stat.

70.     Relying on the zero-calorie claims made on the Products' labels, consumers purchased the Products believing they were purchasing zero-calorie foods, when they were not.

71.     Defendant's use of deceptive, false, and/or misleading Product labels constitutes an unfair or deceptive trade practice within the meaning of the Act.

72.     Defendant's unfair or deceptive trade practice has been the proximate cause of damages sustained by Plaintiff and the Class.

73.    Such damages recoverable by Plaintiff include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial, as well as costs of suit and attorneys' fees.

**COUNT 2**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION**
**17200 *et seq*. — "UNFAIR" CONDUCT**
**California Subclass**

74.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

75.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

76.    Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq.*

77.    Defendant's business practices, as alleged herein, are "unfair" because it fails to disclose accurately the caloric content of the Products.

78.    As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

79.    Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

80.    Defendant publicly disseminated untrue or misleading representations regarding the caloric content of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

81.    Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unfair" business practices and

any other act prohibited by law, including those acts set forth in this Complaint, and further seek all other relief allowable under Business and Professions Code Section 17200, *et seq.*

**COUNT 3**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17200 *et seq.* — "FRAUDULENT" CONDUCT**
**California Subclass**

82.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

83.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

84.    Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq.*

85.    Defendant's business practices, as alleged herein, are "fraudulent" because it fails to disclose accurately the caloric content of the Products.

86.    As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities he would not otherwise have spent or conducted.

87.     Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

88.    Defendant publicly disseminated untrue or misleading representations regarding the caloric content of the Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

89.     Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint,

and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq.*

**COUNT 4**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq.* — "UNLAWFUL" CONDUCT**
**California Subclass**

90.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

91.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

92.     Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq.*

93.     Defendant's business practices, as alleged herein, are "unlawful" because it fails to disclose accurately the caloric content of the Products, in contravention of binding legal requirements governing the accuracy of nutritional labelling.

94.     As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities it would not otherwise have spent or conducted.

95.      Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

96.     Defendant publicly disseminated untrue or misleading representations regarding the caloric content of the Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

97.     Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this court enjoining Defendant from continuing to engage in "unlawful" business practices

and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 5**
**VIOLATION OF CALIFORNIA BUSINESS &**
**PROFESSIONS CODE SECTION 17500 *et seq*.**
**California Subclass**

98.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

99.     Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

100.    Defendant engaged in advertising and marketing to the public and offered for sale advertising services on a nationwide basis, including in California.

101.     Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

102.    Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

103.    At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq*.

104.    Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq*.

**COUNT 6**
**VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT,**
**CAL. CIV. CODE § 1750 *et seq*.**
**California Subclass**

105.    Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

106.   Plaintiff is a "consumer" within the meaning of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

107.   The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

108.   The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

109.   As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the representations regarding the caloric content of the Products that were made by Defendants on the labels and marketing materials relating to the Products, and on advertising materials including third-party websites.

110.   Defendant's ongoing failure to provide material facts about its Products on its labels and associated advertising material violates the following subsections of Cal. Civ. Code § 1770(a) in these respects:

a.   Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

b.   Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another;

c.   Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised;

d.   Defendant's acts and practices fail to represent that transactions involving its Products involve actions that are prohibited by law, particularly the use of misleading labelling; and

CLASS ACTION COMPLAINT

e.   Defendant's acts and practices constitute representations that its Products have been supplied in accordance with previous representations when they were not.

111.   By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief, disgorgement, and restitution.

112.   Pursuant to Cal. Civ. Code § 1782, Plaintiff notified Defendant in writing of the particular violations of the CLRA described herein and demanded Defendant rectify the actions described above by providing complete monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so.

113.   Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff and the Subclass are entitled to recover actual damages sustained as a result of Defendant's violations of the CLRA. Such damages include, without limitation, monetary losses and actual, punitive, and consequential damages, in an amount to be proven at trial.

114.   Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

**COUNT 7**
**UNJUST ENRICHMENT**
**Nationwide Class**

115.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

116.   Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers regarding the caloric content of the Products.

117.   Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

118.    Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium, above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

119.    Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

120.    Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

121.    Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

122.    Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## PRAYER FOR RELIEF

123.    WHEREFORE, Plaintiff respectfully request the Court grant the following relief against Defendant:

a.    Certifying the Class and Subclass;

b.    Declaring that Defendant violated the FDUTPA, CLRA, UCL, and FAL;

c.    Awarding actual and other damages as permitted by law, and/or ordering an accounting by Defendant for any and all profits derived by Defendant from the unlawful, unfair, and/or fraudulent conduct and/or business practices alleged herein;

CLASS ACTION COMPLAINT

d.  Ordering an awarding of injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

e.  Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff pursuant to § 521.2105, Fla. Stat., California Code of Civil Procedure § 1021.5, and/or the common-law private-attorney-general doctrine;

f.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

g.  Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED.

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

August 1, 2022

CLASS ACTION COMPLAINT