Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff Jesse Helems

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HELEMS, *on behalf of all those similarly situated*, <br><br> *Plaintiff,* <br><br> v. <br><br> GAME TIME SUPPLEMENTS, LLC dba RSP NUTRITION, *a Florida corporation,* <br><br> *Defendant.* | No. 3:22-cv-01122-L-AHG <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT** <br><br> Date: November 14, 2022 <br> Time: 10:30 a.m. <br> Hon. M. James Lorenz |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................iii

INTRODUCTION.........................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND ....................................3

LEGAL STANDARD.....................................................................................6

ARGUMENT ..................................................................................................6

    I.     Mr. Helems' Claims are Not Preempted.......................................6

         A.    Website Claims Are Not Preempted by the NLEA. ...................7

         B.    The Claims Related to AminoLean's Labelling are Not Preempted. ....8

         C.    RSP Seeks Resolution of Factual Issues on a Rule 12 Motion. ....13

    II.    Mr. Helems Has Standing to Pursue Injunctive Relief.......................15

    III.   The Claims for Restitution Under the UCL and FAL Are Properly Pleaded In the Alternative.......................15

    IV.   The FDUTPA Applies to Claims Against Florida Corporations by Out-of-State Consumers..........................17

    V.    Mr. Helems Plausibly Pleads a Quasi-Contract Claim for Unjust Enrichment..................19

    V.    Mr. Helems Has Adequately Pleaded Reliance. ................19

    VI.   RSP's Motion to Dismiss the Unjust Enrichment Claim Is Premature..................21

CONCLUSION .............................................................................................22

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................. 10

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ............................................................................... 23

*Bank of America, N.A. v. Zaskey*,
  No. 9:15-cv-81325, 2016 WL 2897410 (S.D. Fla. May 18, 2016) ...................... 22

*Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*,
  No. 10–23869–CIV, 2012 WL 1570057, (S.D. Fla. 2012) .................................. 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................. 10

*Burke v. Weight Watchers Int'l, Inc.*,
  983 F. Supp. 2d 478 (D.N.J. 2013) ................................................................ 12, 18

*Chavez v. Church & Dwight Co., Inc.*,
  No. 17 C 1948, 2018 WL 2238191 (N.D. Ill. May 16, 2018) ............................. 11

*Cielinski v. Werner Enterprises, Inc.*,
  No. 8:10CV351, 2010 WL 5257224 (D. Neb. Dec. 16, 2010) ............................ 26

*Davidson v. Kimberley-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2017) ............................................................................... 19

*Deras v. Volkswagen Grp. of Am., Inc.*,
  No. 17-cv-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) ................ 20

*Durnford v. MusclePharm Corp.*,
  907 F.3d 595 (9th Cir. 2018) ............................................................................... 10

*Eason v. Roman Catholic Bishop of San Diego*,
  414 F. Supp. 3d 1276 (S.D. Cal. 2019) ............................................................... 20

*Eminence Capital, LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) .................................................................... 7, 25, 26

*Greenberg v. Target Corp.*,
  985 F.3d 650 (9th Cir. 2021) ............................................................................... 12

*In re Checking Account Overdraft Litig.*,
  307 F.R.D. 630 (S.D. Fla. 2015) ......................................................................... 25

*In re Dial Complete Marketing and Sales Practices Litig.*,
  312 F.R.D. 36 (D.N.H. 2015) .............................................................................. 26

*In re Farm Raised Salmon Cases*,
  42 Cal. 4th 1077 (2008) ...................................................................................... 10

*In re Flonase Antitrust Litig.*,
  692 F. Supp. 2d 524 (E.D. Pa. 2010) .................................................................. 22

*In re Target Corp. Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) ................................................................. 25

*In re: Dollar General Corp. Motor Oil Mktg. and Sales Practices Litig.*,
  MDL NO. 2709, 2017 WL 3863866 (W.D. Mo. Aug. 3, 2017) .......................... 26

*Kwikset Corp. v. Superior Court*,
  51 Cal.4th 310 (2011) ................................................................................24

*Lal v. Cal. Dept. of Corrs. & Rehab.*,
  No. CV 18-02056-CJC (DFM),
  2020 WL 7051088 (C.D. Cal. Oct. 29, 2020) ...........................................18

*Medtronic, Inc. v. Lohr*,
  518 U.S. 470 (1996) ..................................................................................10

*Metague v. Woodbolt Dist.*,
  No. 8:20-cv-02186-PX, 2021 WL 2457153 (D. Md. June 16, 2021) ..........passim

*Millennium Comms. & Fulfillment, Inc. v.*
*Office of Att'y Gen'l, Dept. of Legal Affairs, State of Fla.*,
  761 So.2d 1256, 1261 (Fla. 3d DCA 2000) ..................................... 21, 22

*Moss v. Infinity Ins. Co.*,
  197 F. Supp. 3d 1191 (N.D. Cal. 2016) .....................................................20

Moss v. U.S. Secret Service,
  572 F.3d 962 (9th Cir. 2009) ....................................................................10

*Natural Chemistry L.P. v. Orenda Techs. Inc.*,
  No. 6:13–cv–1607–Orl–31KRS, 2014 WL 3385046 (M.D. Fla. July 8, 2014) ..22

*Pa. Emp., Benefit Trust Fund v. Zeneca, Inc.*,
  710 F. Supp. 2d 458 (D. Del. 2010) ..........................................................25

*POET Biorefining, LLC v. Env'tl Prot. Agency*,
  970 F.3d 392 (D.C. Cir. 2020) ..................................................................12

*Renaissance Cruises, Inc. v. Glassman*,
  738 So.2d 436 (Fla. 4th DCA 1999) .........................................................22

*Sciortino v. Pepsico, Inc.*,
  108 F. Supp. 3d 780 (N.D. Cal. 2015) ................................................ 11, 12

*Shaeffer v. Califia Farms, LLC*,
  44 Cal. App. 5th 1125 (2020) ....................................................................24

*Shapiro v. AT&T Mobility, LLC*,
  No. 2:19-CV-8972-CBM-FFM, 2020 WL 4341778 (C.D. Cal. 2020) .........25

*Sonner v. Premier Nutrition Corporation*,
  971 F.3d 834 (9th Cir. 2020) ....................................................................20

*Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*,
  522 F. Supp. 3d 402 (N.D. Ill. 2021) ........................................................26

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) .................................................................26

*Vinluan-Jularbal v. Redbubble, Inc.*,
  No. 2:21-cv-00573, 2021 WL 4286539 (E.D. Cal. Sept. 21, 2021) ...........19

*Wallace v. SharkNinja Operating, LLC*,
  No. 18-cv-05221-BLF, 2020 WL 1139649 (N.D. Cal. Mar. 9, 2020) .........26

*Wildin v. FCA US LLC*,
  No. 3:17cv-02594-GPC-MDD,
  2018 WL 3032986 (S.D. Cal June 19, 2018) ...................................... 20, 21

*XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*,
  No.: 3:21-cv-00105-BEN-KSC, 2022 WL 801743 (S.D. Cal. 2022) ...........18

-iv-

## Statutes

21 U.S.C. § 301 ...........................................................................................5

21 U.S.C. § 343–1(a)............................................................................10, 18

Consumer Legal Remedies Act, Cal. Civ. Code § 1750.......................................10

False Advertising Law, Cal. Bus. & Prof. Code § 17500.....................................10

Florida Deceptive and Unfair Trade Practices Act, § 501.201, Fla. Stat. .......10, 21

Nutrition Labelling and Education Act, P.L. 101-535, 104 Stat. 2353 ................5

Unfair Competition Law, Cal. Bus. & Prof. Code § 17200..................................10

## Regulations

21 C.F.R. § 101.2(a)(1) ................................................................................15

21 C.F.R. § 101.9(c)..............................................................................11, 14

21 C.F.R. § 101.36(b)(2)..............................................................................13

## Other Authorities

Food & Drug Admin.,
  Dietary Supplement Labeling Guide:
  Chapter IV. Nutrition Labeling..................................................................13

Food & Drug Admin.,
  Frequently Asked Questions for Industry on
  Nutrition Facts Labeling Requirements ...............................................14, 17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

Consumers such as Plaintiff Jesse Helems rely on a company's claims about the calories in a dietary supplement, "as they cannot confirm or disprove those claims simply by viewing or even consuming the Product." Complaint ("Compl.") ¶ 47. So, when a consumer like Mr. Helems is told repeatedly that a dietary supplement has "zero calories per serving," he reasonably expects that statement to be true and relies on it.

Certainly, no reasonable consumer would expect that a supposedly "zero calorie" dietary supplement actually has **_30_** calories per serving, or more than 2,000 calories in the entire container. Yet that is the actual caloric content of the AminoLean Pre-Workout powder, formulated and sold by Defendant Game Time Supplements, LLC dba RSP Nutrition ("RSP"). This dietary supplement is explicitly sold to consumers like Mr. Helems as a weight and fat loss tool. The point of this product is captured by its name: Amino**_Lean_**, a dietary supplement formulated and marketed to help consumers cut fat and lose weight. Since AminoLean actually contains far more than zero calories, this is a product that misleads consumers in its very name. RSP's multiple "zero calories" statements about its product are not just false and misleading, they misrepresent the characteristic of this product that is most relevant to consumers.

Rather notably, RSP's motion to dismiss never actually denies that AminoLean Pre-Workout powder contains far, far more than zero calories per serving. Instead, RSP argues that the putative class claims under Florida and California consumer protection law are preempted. RSP asserts these claims are preempted because Mr. Helems seeks to enforce truth-in-labelling requirements that are purportedly not found in the federal Food, Drugs, and Cosmetics Act ("FDCA"), 21 U.S.C. § 301 *et seq*., as amended in relevant part by the Nutrition Labelling and Education Act ("NLEA"), P.L. 101-535, 104 Stat. 2353.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT

Not so. To start, these regulatory provisions in the NLEA do not apply at all to RSP's many zero calorie statements on its own website and on third-party websites that sell AminoLean Pre-Workout. As these zero calorie statements are not *labelling* statements, they are plainly not preempted by federal labelling statutes and regulations.

Then, the scope of these federal labelling statutes and regulations must be read in light of interpretive guidance from the Food & Drug Administration, which directs that total calories in an amino acid-based dietary supplement such as Amino Lean must be reported accurately, even though the amino acids are not "complete" proteins. This is the interpretation of federal labelling regulations recently adopted by a federal district court in Maryland, in a case that is nearly identical to this one. *See Metague v. Woodbolt Dist.*, No. 8:20-cv-02186-PX, 2021 WL 2457153 (D. Md. June 16, 2021).

Finally, the Complaint's allegations set forth a factual dispute about whether the supplement is misbranded under all of the FDA's so-called "five methods" for determining caloric content. Using an ad hoc analysis that amounts to no more than counsel improperly giving expert testimony, RSP attempts to transmogrify this factual dispute into a legal dispute that can be resolved under Rule 12. It is not. Mr. Helems' Complaint adequately alleges that RSP has made false and deceptive statements regarding the caloric content of AminoLean Pre-Workout, and none of his claims are preempted by federal law.

Otherwise, RSP asserts that Mr. Helems' claims under California's Unfair Competition Law ("UCL") and False Advertising Law ("FAL") are not adequately pleaded because he has an adequate remedy at law. But RSP ignores that these claims are pleaded in the alternative, as permitted under Federal Rule 8. RSP also asserts that Mr. Helems lacks standing to seek injunctive relief, despite on-point Ninth Circuit case law to the contrary. RSP ignores clear pleading of reliance by

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Mr. Helems on the false and deceptive zero calorie statements the company made. RSP argues that Florida consumer protection law does not apply extraterritorially, despite plain statutory language and clear Florida appellate case law (and Florida federal district court case law) to the contrary. And it argues both that the claim for unjust enrichment is not a valid cause of action in California, and that no national class can be certified pursuant to it. The former contention is wrong, while the latter is at best premature in the absence of a detailed choice-of-law analysis undertaken at class certification.

All told, RSP's arguments are unavailing, and its motion should be denied in its entirety. If the motion is granted in any respect, Mr. Helems should be given leave to amend his Complaint. *See Eminence Capital, LLC v. Aspeon, Inc*., 316 F.3d 1048, 1051 (9th Cir. 2003).

## FACTUAL AND PROCEDURAL BACKGROUND

On or about May 13, 2022, Plaintiff Jesse Helems ordered RSP Nutrition's AminoLean Pre-Workout powder, blackberry pomegranate flavor. Compl. ¶ 6. RSP markets this product as providing "Natural Weight Management" benefits, and it is used to cut fat and lose weight. *Id*. ¶ 23. Mr. Helems purchased and intended to use AminoLean in order to maintain the substantial weight loss he achieved in 2016, when he dropped 150 pounds (out of 300) through cardio-based fitness and, especially, careful tracking to maintain a caloric deficit every day. After losing an additional 15 pounds to get to 135, he decided to add lean mass through strength training supported by controlled caloric intake, using pre- and post-workout supplements such as AminoLean. *Id*. ¶ 7. RSP is a Florida corporation with its principal place of business in that state. *Id*. ¶ 9.

RSP states in at least three separate locations that the AminoLean Pre-Workout product contains zero calories. First, it makes this claim in the "Supplement Facts" panel on the back of every AminoLean Pre-Workout

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

container—including the one purchased by Mr. Helems, a picture of which is included in the Complaint:



Compl. ¶ 22.

Then, RSP makes the same claim on the front label (or "principal display panel"), including on Mr. Helems' container:



*Id.* ¶ 22.

Finally, RSP made the same claim on its website for AminoLean Pre-Workout:

> A COMPREHENSIVE, NATURAL WEIGHT MANAGEMENT SUPPLEMENT - A scientifically formulated blend of Conjugated Linoleic Acid (CLA), L-Carnitine Powder, Green Tea Extract, and Green Coffee Bean promote natural weight management to help maintain a lean physique year-round
>
> ZERO SUGARS, CARBS, OR CALORIES - AminoLean has 0 sugars, 0 carbs and 0 calories; making it an extremely clean product for any diet. Additionally, it does not contain any gluten in its ingredients.

*Id.* ¶ 23 (https://rspnutrition.com/collections/pre-and-post-workout/products/aminolean-fruit-punch) (last visited July 15, 2022)).

RSP also made the same zero calorie claim on third-party websites where AminoLean Pre-Workout is sold, including on Amazon.com, Wholefoods.com, and Walmart.com, stating that the powder "contains zero sugar, carbs, or calories making it a guilt-free, keto friendly all-in-one energy, weight management, and amino acids solution." *Id.* ¶ 25.

Shortly after receiving Mr. Helems' demand letter, RSP removed its zero calories claim from its website. Compl. ¶ 24. Since the filing of the Complaint, the zero calories claim has also been removed entirely from the labelling for AminoLean Pre-Workout. *See* https://rspnutrition.com/products/aminolean-blackberry-pomegranate (last visited October 29, 2022).

At counsel's direction, the container of AminoLean Pre-Workout purchased by Mr. Helems was tested by an independent third-party laboratory using bomb calorimetry, which is one of five FDA-approved methods for determining caloric content in a dietary supplement. Compl. ¶ 30. *See also* 21 C.F.R. § 101.9(c). That analysis revealed that, contrary to RSP's many zero calorie statements, AminoLean Pre-Workout contains 30 calories per serving, or about 2,140 calories in the entire container. Compl. ¶ 30.

Mr. Helems brings claims on behalf of a national class under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201, Fla. Stat. *et seq.*, and for unjust enrichment. He brings claims on behalf of a California subclass under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; and False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). When considering a motion to dismiss, a court must accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A complaint need not include the facts necessary to carry the plaintiff's burden, or detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[P]laintiffs are generally not expected to provide evidence in support of their claims at the pleading stage, nor are they required to plead the 'probability' of their entitlement to relief." *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018) (citations omitted).

**ARGUMENT**

**I.   Mr. Helems' Claims are Not Preempted.**

The FDCA preempted state law that was inconsistent with its requirements. *See* 21 U.S.C. § 343–1(a). But Congress anticipated states enacting their own identical laws regarding misbranding and mislabelling of products. *See In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077, 1090 (2008). State laws are not preempted if they are impose requirements "equal to, or substantially identical to,

requirements imposed by" the FDCA. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 496–97 (1996).

Because Mr. Helems does not seek to enforce a standard that is different from any standard under the FDCA, his consumer protection claims under Florida and California law are not preempted.

### A.     Website Claims Are Not Preempted by the NLEA.

First, preemption under the Nutritional Labelling and Education Act plainly does not apply to claims made on RSP's website (and on other third-party websites where the product description is supplied by or controlled by RSP). The NLEA preempts any state requirement that is "not identical to" the federal standard of identity for a food. 21 U.S.C. § 343-1(a)(1). But as its name suggests, the NLEA applies only to *labelling*. Nothing in the NLEA even suggests, much less states, that it applies to consumer claims made elsewhere, such as on a website.

In fact, the plain language of Section 101.9(c), on which RSP exclusively relies, makes clear that this provision applies only to "[t]he declaration of nutrition information ***on the label*** and ***in labeling of a food***." 21 C.F.R. § 101.9(c) (emphases added). For this reason, courts have held that a false claim "made in [a company's] public statements and/or on its website is a deceptive claim regarding a consumer product" that can give rise to liability under state consumer protection law. *Sciortino v. Pepsico, Inc*., 108 F. Supp. 3d 780, 807 (N.D. Cal. 2015) (denying motion to dismiss consumer product website claim as preempted by FDA regulations). *See also, e.g., Chavez v. Church & Dwight Co., Inc*., No. 17 C 1948, 2018 WL 2238191, at *6 (N.D. Ill. May 16, 2018) (no preemption where "misrepresentation claim is based on statements made on Church's *website*, not on any product label or packaging") (emphasis in original); *Metague v. Woodbolt Dist*., No. 8:20-cv-02186-PX, 2021 WL 2457153, at *1 (D. Md. June 16, 2021)

(denying motion to dismiss claim as preempted where zero-calorie claim appeared "[o]n [the product's] website and on XTEND's package labeling").

RSP's opposition simply ignores the allegations regarding its website claims. In fact, the word "website" never appears a single time in the company's brief. But the allegation renders inapposite all of the case law on which RSP relies. For example, RSP repeatedly points to *Burke v. Weight Watchers Int'l, Inc.*, 983 F. Supp. 2d 478 (D.N.J. 2013), in support of its assertion that Mr. Helems' claims are preempted. RSP's Memorandum in Support ("Memo.") 8-9. But the allegations in *Burke* were directed solely at labelling claims, not website claims. *See Burke, supra*, at 480 (alleging that "[a]ccording to the label on its box, the Ice Cream Candy Bar contains 140 calories."). The same is true of other cases in which RSP relies. *See, e.g., Greenberg v. Target Corp.*, 985 F.3d 650, 653 (9th Cir. 2021) (preemption found when allegedly deceptive statements made on labelling) (cited at Memo. 9).

These cases simply do not apply to a claim made on a website, independent of a food product label. Because RSP has "pointed to no provision of the FDCA or FDA regulations that preempts claims based on … alleged misrepresentations" on a website, this claim is not preempted. *Sciortino*, 108 F. Supp. 3d at 807.

**B. The Claims Related to AminoLean's Labelling are Not Preempted.**

While website claims such as RSP's are clearly outside the scope of 21 C.F.R. § 101.9(c) and are not preempted, that does not mean that RSP's direct labelling claims *are* preempted. In fact, FDA guidance designed to elucidate the scope of this provision and the requirements around dietary supplement labelling make clear that "total calories," from whatever source derived, should be reported accurately if they are declared. That is, the relevant regulatory language also needs to be read and interpreted in light of FDA's interpretive guidance. *See, e.g., POET Biorefining, LLC v. Env'tl Prot. Agency*, 970 F.3d 392, 408 (D.C. Cir. 2020)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(reading regulatory language in light of interpretive agency guidance; noting that courts regularly "uph[o]ld interpretive rules that narrow or remove leeway afforded to regulated parties under a prior interpretation"). This is precisely the method employed in a recent federal district court case, *Metague v. Woodbolt Distributors*—a case that squarely rejected the preemption argument made here.

### 1.     FDA's guidance clarifies the scope of Section 101.9(c).

Under FDA regulations, a dietary supplement manufacturer cannot represent that individual amino acids are complete proteins, as these individual amino acids do not provide the benefits of complete proteins. *See* 21 C.F.R. § 101.36(b)(2). RSP argues that because it cannot under federal law represent that individual amino acids are complete proteins, it is not required to report accurately the calories in AminoLean attributable to those amino acids. Memo. 2-3.

But notably, nothing in Section 101.9(c)(2) permits the manufacturer of an amino acid-based supplement to affirmatively *misrepresent* the calories in a food product that are associated with amino acids. In fact, FDA guidance interpreting the food labelling regulations for amino acid-based dietary supplements instruct manufacturers to report "total calories" separate and apart from calories from sources such as fat on a dietary supplement label. *See* Food & Drug Admin., Dietary Supplement Labeling Guide: Chapter IV. Nutrition Labeling, *available at* https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling#4-6. This directive to report "total calories" means exactly what it sounds like: All the calories in each serving, from wherever derived.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This is also the only interpretation of Section 101.9(c) that makes sense of the FDA's example for labeling calories for an amino acid-based supplement that was released to the field in 2016. *See* Food & Drug Admin., Frequently Asked Questions for Industry on Nutrition Facts Labeling Requirements, *available at* https://www.fda.gov/media/99158/download. This exemplar Supplement Facts panel for amino acid-based products, as pictured below, displays approximately 4 grams of total amino acids, which would approximate 16 calories and is listed as 15 based on applicable rounding rules:

(vii) Dietary supplement of amino acids



**Supplement Facts**

Serving Size 1 Tablet
Servings Per Container 50

**Amount Per Tablet**

| | |
|---|---|
| Calories | 15 |
| Isoleucine (as L-isoleucine hydrochloride) | 450 mg* |
| Leucine (as L-leucine hydrochloride) | 620 mg* |
| Lysine (as L-lysine hydrochloride) | 500 mg* |
| Methionine (as L-methionine hydrochloride) | 350 mg* |
| Cystine (as L-cystine hydrochloride) | 200 mg* |
| Phenylalanine (as L-phenylalanine hydrochloride) | 220 mg* |
| Tyrosine (as L-tyrosine hydrochloride) | 900 mg* |
| Threonine (as L-threonine hydrochloride) | 300 mg* |
| Valine (as L-valine hydrochloride) | 650 mg* |

* Daily Value not established.

Other ingredients: Cellulose, lactose, and magnesium stearate.

Compl. ¶ 27.

In this example, no proteins, carbohydrates, or fats are reported. But "total calories" are nonetheless listed—even though there are no complete proteins reported, but only approximately 4.2 grams of nine individual amino acids. This example panel, included in FDA interpretive guidance, illustrates that under 21 C.F.R. § 101.9(c), the requirement to list total calories is independent of the various reporting requirements and prohibitions relating to reporting individual amino acids versus complete proteins.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The directive has special force in the context of the front label, or "principal display panel," where RSP prominently states that AminoLean has "zero calories." Compl. ¶ 22. The principal display panel is the part of the label the consumer is most likely to review at the time of purchase, *see* 21 C.F.R. § 101.2(a)(1), and is therefore the place where a manufacturer most prominently features its marketing strategy for the product. AminoLean's bold, prominent zero calories statement on the principal display panel stands alone, without any of the supposed context regarding individual amino acids versus complete proteins on which RSP relies. This is further evidence that the requirement to list "total calories" extends to calories attributable to amino acids.

### 2. Federal courts have looked to FDA's interpretive guidance to determine the scope of Section 101.9(c).

Notably, this is precisely the conclusion reached recently by a federal district court in Maryland. The Court there looked to the FDA's calorie labelling guidance to find that a suit under state consumer protection law alleging failure to accurately state "total calories" in an amino acid-based supplement was ***not*** preempted by FDCA regulations. *See Woodbolt*, 2021 WL 2457153, at *2.

*Woodbolt* is on all fours with this case. There, an amino acid supplement manufacturer made zero-calorie claims that appeared "[o]n [the product's] website and on [the product's] package labeling." *Id*. at *1. The Court reviewed labelling requirements for supplements, noting that "[g]enerally, food products must include on the label the number of calories expressed to the nearest five-calorie increment when the product contains a total of fifty calories per serving" and that "[o]nly products that contain fewer than five calories per serving may state that the caloric value is 'zero.'" *Id*. It then reviewed the use of the FDA-approved "five methods" to determine calories. *Id*.

In interpreting the scope of these requirements as applied to amino acid-based supplements, the *Woodbolt* Court turned to FDA's guidance documents. *See*

-11-

*id*. at *2 (noting that "[t]he FDA buttresses its nutritional labeling regulations with several publications to aid the industry in compliance"). The Court reviewed the FDA exemplar label shown above and concluded that it "specifically illustrates" and "mak[es] clear" that the label on an amino acid product "must list the amino acids present in the supplement alongside other ingredients, ___as well as the calories per serving___." *Id*. (emphasis added). As such, plaintiff's deceptive labelling claims under state consumer protection law were not preempted and could proceed.

RSP dismisses *Woodbolt* as "facile" and says it "provides little reasoning." Memo. at 11. RSP launches these attacks because *Woodbolt* is squarely applicable here, and there is no material difference between the false claims made on the labels in that case and in this one. In fact, the *Woodbolt* Court undertook a careful analysis of both the regulations and FDA's interpretive guidance. Comparing the FDA's example panel (4.2 grams of nine individual amino acids) to RSP's panel (5 grams of 14 individual amino acids) makes clear just how spot-on the example is:



The only substantive difference between these Supplement Facts panels is that the FDA example reports "total calories" accurately, while RSP's AminoLean Pre-Workout panel (falsely and deceptively) does not.

RSP also dismisses FDA's exemplar panel as "provided merely to show new font size and design formats for Supplement Facts panels." Memo. 11. Putting aside the unlikelihood that FDA would publish an example Supplement Facts panel that was substantively unlawful just to demonstrate font size, this is simply not true on the face of the guidance document. The first page of this document notes a number of substantive changes to labelling requirements, including dropping certain vitamins and "calories from fat" from the list of "(b)(2) dietary ingredients," adding others (including "total sugars") and updating the required units of measures. *See* https://www.fda.gov/media/99158/download. This guidance is not merely an update to fonts and formatting; it interprets and imposes substantive labelling requirements. And as the *Woodbolt* Court determined, the requirement it imposes is to "list the amino acids present in the supplement alongside other ingredients, ___as well as the calories per serving___." *Woodbolt*, 2021 WL 2457153 at *2.

### C.  RSP Seeks Resolution of Factual Issues on a Rule 12 Motion.

Finally, even if the Court were to reject Mr. Helems' argument that 20 C.F.R. § 101.9(c) must be read in light of FDA's interpretive guidance, he has squarely alleged that RSP's labels are mislabelled under all of the "five methods." RSP asks the Court to reject this allegation and determine this factual issue on a motion to dismiss—squarely in contravention of the principle that Rule 12 tests legal and not factual sufficiency.

Here, Mr. Helems has explicitly pleaded that he has analyzed and evaluated AmionoLean Pre-Workout's labels in accordance with each of the five methods identified by the FDA regulations, and has determined that every results shows that AminoLean exceeds the calorie value on the label by more than 20 percent. Compl. ¶ 34 ("Under any of the FDA's relevant Five Methods, the Product is mislabelled….").

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Again, this allegation distinguishes this case from *Burke*, on which RSP relies, where the plaintiff never alleged that the product was mislabelled under all five methods. *See Burke*, 983 F. Supp. at 483. And it again places this case on all fours with *Woodbolt*, where there was a similar allegation relating to misbranding under all five methods. *See Woodbolt*, 2021 WL 2457153 at *2 (product was misbranded under "each of the five FDA methods applicable to measuring caloric content"). There, plaintiff's allegation that the product was misbranded under all of the five methods was sufficient to defeat a motion to dismiss.

RSP engages in its own ad hoc expert analysis of the AminoLean Pre-Workout labelling, purporting to apply various standards referenced in the regulation to show that Mr. Helems's allegation is wrong. Memo. 10-11. But application of the five methods to a product label requires "in-depth analysis of … highly technical documents," and it is not the purpose of Rule 12 to "resolve factual disputes between the parties" through such ad hoc analysis. *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, No.: 3:21-cv-00105-BEN-KSC, 2022 WL 801743, at *20 (S.D. Cal. 2022). This uncited, unsupported analysis is merely counsel's speculation—essentially, counsel testifying as an unapproved expert witness—and provides no basis for dismissal under Rule 12. *See, e.g., Lal v. Cal. Dept. of Corrs. & Rehab.*, No. CV 18-02056-CJC (DFM), 2020 WL 7051088, at *3 (C.D. Cal. Oct. 29, 2020) (noting that "[d]efendant's speculation … is not well-taken on a motion to dismiss").

The NLEA preempts any state requirement that is "not identical to" the federal standard of identity for a food. 21 U.S.C. § 343-1(a)(1). But Mr. Helems' Complaint does not attempt to challenge or establish any requirement for nutritional labeling greater than those required by FDA regulations. Thus, there is no basis for RSP's argument that his claims are preempted.

-14-

## II.   Mr. Helems Has Standing to Pursue Injunctive Relief.

RSP asserts that Mr. Helems lacks standing to seek injunctive relief because there is no danger that he will suffer future harm. Memo. 5-7. Not so.

In *Davidson v. Kimberley-Clark Corp*., 889 F.3d 956 (9th Cir. 2017), the Ninth Circuit held that a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Id*. at 969. In so holding, the Court rejected the argument that a plaintiff does not have standing to seek injunctive relief because "plaintiffs who are already aware of the deceptive nature of an advertisement are not likely to be misled into buying the relevant product in the future and, therefore, are not capable of being harmed again in the same way." *Id*. at 968. In applying *Davidson*, federal courts have found that even when a plaintiff avers that he "would never knowingly support a company selling illegal products in violation of federal law" he nonetheless "faces [a] risk of future harm" and thus has standing to pursue injunctive relief. *Vinluan-Jularbal v. Redbubble, Inc*., No. 2:21-cv-00573, 2021 WL 4286539, at *2 (E.D. Cal. Sept. 21, 2021).

## III.   The Claims for Restitution Under the UCL and FAL Are Properly Pleaded In the Alternative.

RSP asserts that the claims for restitution in Counts 2-5—which plead violations of the UCL and FAL—as well as the claim for unjust enrichment (Count 7) must be dismissed because Mr. Helems has adequate remedies at law. Memo. 12-15. This argument ignores the fact that the claims for restitution are explicitly pleaded in the alternative, in case discovery reveals that an adequate remedy at law does not exist. Such alternative pleading is permitted under California and federal law.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In general, a plaintiff may seek equitable relief (such as restitution or disgorgement under an unjust enrichment theory) only if it lacks an adequate legal remedy at law. *See Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016). But courts permit alternative pleading of an equitable remedy such as restitution in UCL and FAL cases, in the event discovery reveals that a plaintiff lacks an adequate remedy at law. This is simply an extension of the principle, found in Federal Rule 8, that a plaintiff may plead "relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). *See also* 1 James Wm. Moore, *Moore's Federal Practice* § 2.03[2], at 2–25 (3d ed. 1997) ("It is not generally a ground for dismissal of a complaint asserting equitable claims that the plaintiff has an adequate remedy at law.").

Applying these principles, courts in UCL and FAL cases have permitted alternative pleading, holding that "there is no procedural bar to a federal court plaintiff pleading alternative remedies" under these statutes. *Wildin v. FCA US LLC*, No. 3:17cv02594, 2018 WL 3032986, at *7 (S.D. Cal. June 19, 2018). *See also Eason v. Roman Catholic Bishop of San Diego*, 414 F. Supp. 3d 1276, 1281–82 (S.D. Cal. 2019) (finding plaintiff could pursue alternative equitable remedies under the UCL at the pleading stage); *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452, 2018 WL 2267448, at *6 (N.D. Cal. May 17, 2018) (same).

That is exactly what Mr. Helems has done. His Complaint, "to the extent necessary, pleads [these] cause[s] of action in the alternative." FAC ¶¶ 74, 82, 90, 98, 115. RSP's motion should be denied because Plaintiff is merely pursuing alternative relief if he lacks an adequate remedy at law, which is permissible under any conceivably relevant set of pleading rules.

Arguing the contrary, RSP cites to *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834 (9th Cir. 2020). Memo. 10-11. But *Sonner* was in a

-16-

1
2
3
4
5
6
7
8
9
10

radically different posture than this case and is inapposite. In *Sonner*, the plaintiff attempted to amend her complaint to add equitable claims under the UCL and FAL in addition to her claims for money damages. But she attempted to do so only after "[b]oth sides took discovery, engaged in motion practice, … two months before trial was scheduled to begin, and after defeating Premier's summary judgment efforts." *Id*. at 838. That is, plaintiff tried to add claims for equitable relief after discovery had *already* revealed that she had colorable claims for actual damages. By contrast, because there has been no discovery in this case, the Court cannot say with certainty at this stage whether Mr. Helems has an adequate legal remedy. *Wildin*, 2018 WL 3032986 at *7.

11
12

## IV.   The FDUTPA Applies to Claims Against Florida Corporations by Out-of-State Consumers.

13
14
15
16

RSP also argues that Count 1, the claim under the Florida Deceptive and Unfair Trade Practices Act, must be dismissed because the FDUPTA does not have extraterritorial effect. Memo. 15. This argument ignores both the plain language of the statute and the weight of state and federal case law.

17
18
19
20
21
22
23
24
25
26

Determining the territorial scope of the FDUPTA requires analysis of its plain language, which is "the acknowledged polestar of statutory construction." *Millennium Comms. & Fulfillment, Inc. v. Office of Att'y Gen'l, Dept. of Legal Affairs, State of Fla*., 761 So.2d 1256, 1261 (Fla. 3d DCA 2000). The FDUPTA is intended "[t]o protect the consuming public and legitimate enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of ***any trade or commerce***." § 501.202, Fla. Stat. (emphasis added). "[T]rade or commerce" is defined as "the advertising, soliciting, providing, offering, or distributing, whether by sale ... or otherwise, of any good ... ***wherever situated***." *Id*. § 501.203 (emphasis added).

27
28

"Conspicuously absent from this chapter . . . is any language which purports to confine the provisions of FDUTPA or limit the . . . enforcement authority to

-17-

commercial transactions involving only Florida residents." *Millennium Communications,* 761 So.2d at 1261. Because "there are no geographical or residential restrictions contained in the express language of section 501.202," its scope extends to transactions involving out-of-state consumers engaged in "trade or commerce" with Florida corporations such as RSP. *Id.* at 1262.

The weight of state authority agrees with the well-reasoned decision in *Millennium Communications*. For example, in *Renaissance Cruises, Inc. v. Glassman*, 738 So.2d 436, 439 (Fla. 4th DCA 1999), the Florida Fourth District Court of Appeals receded from an earlier decision to approve a multi-state class— exactly the kind of class pleaded here—seeking relief on behalf of out-of-state consumers from a Florida corporation such as RSP.

And federal courts in Florida and elsewhere, pointing to the broad language of the statute, have largely rejected the contention "that the FDUTPA applies only to the limited circumstance where the consumer is located in Florida and the errant conduct at issue occurs entirely within Florida," but rather have recognized FDUTPA claims against Florida corporations brought by out-of-state consumers. *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc*., No. 10–23869–CIV, 2012 WL 1570057, at *5 (S.D. Fla. 2012). *See also, e.g., In re Flonase Antitrust Litig.,* 692 F. Supp. 2d 524, 537 (E.D. Pa. 2010) (reviewing plain statutory language and concluding that "[t]here is no reason to read restrictions into the statute that the legislature has failed to include"); *Bank of America, N.A. v. Zaskey*, NO. 9:15-cv-81325, 2016 WL 2897410, at *10 (S.D. Fla. May 18, 2016) (permitting an FDUTPA claim brought by an out-of-state consumer against a Florida corporation where there was a "fair inference" the deceptive statements at issue "originated in Florida"); *Natural Chemistry L.P. v. Orenda Techs. Inc.*, No. 6:13–cv–1607–Orl–31KRS, 2014 WL 3385046, at *4 (M.D. Fla. July 8, 2014) ("the home state of the

Plaintiff does not disqualify it from bringing a FDUTPA claim" against a company doing business in Florida).

## V.   Mr. Helems Plausibly Pleads a Quasi-Contract Claim for Unjust Enrichment.

RSP also asserts that Count 7, the unjust enrichment claim, fails as a matter of law because there is no standalone cause of action for unjust enrichment in California. Memo. 19. Not so.

As the Ninth Circuit has recognized, a claim for "unjust enrichment" simply "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 Cal. Jur. 3d *Restitution* § 2). Thus, when a plaintiff alleges unjust enrichment, the Court should "construe the cause of action as a quasi-contract claim seeking restitution." *Id*. Here, Mr. Helems has alleged that RSP induced him to purchase AminoLean Pre-Workout through "false and misleading" labeling, and that RSP has unjustly obtained a benefit as a result. Compl. ¶¶ 116-20. "This straightforward statement is sufficient to state a quasi-contract cause of action." *Astiana*, 783 F.3d at 762.

## V.   Mr. Helems Has Adequately Pleaded Reliance.

RSP also asserts that Mr. Helems has failed to adequately plead reliance. Memo. 16. In fact, Mr. Helems repeatedly pleads that he relied on RSP's zero calorie statements. And should there be any technical shortcoming in his allegations, the remedy is leave to amend, not dismissal with prejudice.

First, Mr. Helems alleges that because of his own particular weight loss journey (which saw him lose 150 pounds through intentional eating and careful use of supplements), he "relies on supplements' label claims and consumes foods, drinks, and supplements with intentionality." Compl. ¶¶ 7-8. Mr. Helems also

alleged that he understood RSP's "statements to mean that each Product contained zero calories as advertised and represented," and that he "reasonably rel[ied]" on those statements such that he "would not have purchased the Products … if the truth about the Products' caloric content were known, or would have only been willing to pay a substantially reduced price." *Id*. ¶¶ 45-46. He alleges that, like other consumers, he "especially rel[ies] on the 'zero calorie' label claims made by food product manufacturers such as RSP Nutrition, as they cannot confirm or disprove those claims simply by viewing or even consuming the Product." *Id*. ¶ 47. Finally, Mr. Helems alleges that he "suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury." *Id*. ¶ 48.

This is sufficient to plead reliance. That is, Mr. Helems has explicitly stated that like other consumers he understood RSP's zero calorie statements to be true, and purchased the product in reliance on those statements—which he otherwise would not have done had the truth been told. In a fraud claim under California law, a plaintiff's allegation "'[]he would not have bought the product but for the' allegedly actionable misrepresentation or omission" is sufficient to establish reliance. *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1143 (2020) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 317 (2011)). Meanwhile, reliance is not a required element under the FDUTPA. *See Fitzpatrick v. General Mills, Inc*., 635 F.3d 1279, 1283 (11th Cir. 2011) ("[A] plaintiff need not prove reliance on the allegedly false statement to recover damages under FDUTPA, but rather a plaintiff must simply prove that an objective reasonable person would have been deceived.").

Moreover, even if the Court were to determine that there is some technical shortcoming in Mr. Helems' allegations of reliance, he should be granted leave to amend his Complaint to address them. *See, e.g*., *Shapiro v. AT&T Mobility, LLC*,

No.: 2:19-CV-8972-CBM-FFM, 2020 WL 4341778, at \*5 (C.D. Cal. 2020) (granting "leave to amend to plead additional facts regarding … Plaintiff's actual reliance"); *Eminence Capital,* 316 F.3d at 1051 (federal rules require courts to "freely give leave [to amend] when justice so requires," and "[t]his policy is to be applied with extreme liberality").

## VI.  RSP's Motion to Dismiss the Unjust Enrichment Claim Is Premature.

Finally, RSP asserts that variations in the law of unjust enrichment across the states will require individualized determinations among class members, and separately moves to dismiss the unjust enrichment claim (Count 7) on this basis. Memo. 16-20. Plaintiffs have expressly pleaded that RSP has inequitably retained a benefit because of its false and deceptive labelling. Compl. ¶¶ 116-20.

"There is general agreement among courts that the 'minor variations in the elements of unjust enrichment under the laws of the various states ... are not material and do not create an actual conflict'" requiring dismissal of nationwide class allegations. *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 653 (S.D. Fla. 2015) (quoting *Pa. Emp., Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 477 (D. Del. 2010)). On this basis, district courts have rejected the exact claim that RSP is making: that an unjust enrichment claim should be dismissed at the motion to dismiss stage because of supposed variations in state law. *See, e.g.*, *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1177 (D. Minn. 2014) (denying motion to dismiss unjust enrichment class claim because "The substantive law of unjust enrichment is consistent across all jurisdictions: Plaintiffs must plead that [defendant] "knowingly received or obtained something of value [ ] which [it] 'in equity and good conscience' " should not have received.") (quotations omitted).

Here, RSP relies generally on cases that rejected unjust enrichment claims **_at class certification_**. *See, e.g.*, *In re Dial Complete Mktg. and Sales Practices*

*Litig.*, 312 F.R.D. 36, 46 (D.N.H. 2015); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1260 (11th Cir. 2009); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 939 (C.D. Cal. 2015). But RSP "has not shown that the conflicts of law it has identified are material enough to defeat certification ***at the pleading stage***." *Texas Hill Country Landscaping, Inc. v. Caterpillar, Inc.*, 522 F. Supp. 3d 402, 411 (N.D. Ill. 2021) (emphasis added). *See also, e.g.*, *In re: Dollar General Corp. Motor Oil Mktg. and Sales Practices Litig.*, MDL NO. 2709, 2017 WL 3863866, at *6 (W.D. Mo. Aug. 3, 2017) ("At this point in the litigation, … Plaintiffs have sufficiently pled a plausible claim of unjust enrichment on behalf of a nationwide class."); *Cielinski v. Werner Enterprises, Inc.*, No. 8:10CV351, 2010 WL 5257224, at *2 (D. Neb. Dec. 16, 2010) (same).

RSP offers no substantive analysis of the supposed variations in the law of unjust enrichment that, it asserts, dooms this claim before any evidence is taken. "Defendant's challenge is better suited for the class certification stage," where the Court can undertake a detailed choice of law analysis on the basis of a developed factual record and briefing. *Wallace v. SharkNinja Operating, LLC*, No. 18-cv-05221-BLF, 2020 WL 1139649, at *15 (N.D. Cal. Mar. 9, 2020).

## CONCLUSION

Considering the foregoing, RSP's motion to dismiss should be denied in its entirety. But, even if the Court were to conclude that something essential was lacking in Mr. Helems' substantive or class averments, he should be granted leave to replead her allegations. *See Eminence Capital,* 316 F.3d at 1051 (federal rules require courts to "freely give leave [to amend] when justice so requires," and "[t]his policy is to be applied with extreme liberality").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (SBN: 207034)
Attorney for Plaintiff

October 31, 2022

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on this date, October 31, 2022, I caused the foregoing to be filed into the docket of this matter via the Clerk of Court's CM/ECF system, which filing caused service to be made on all counsel of record.

Respectfully submitted,

/s/ *Charles C. Weller*

Charles C. Weller (SBN: 207034)
Attorney for Plaintiff