William P. Cole, Bar No. 186772
Matthew R. Orr, Bar No. 211097
AMIN TALATI WASSERMAN, LLP
4660 La Jolla Village Drive,
Suite 100 #1049
San Diego, CA 92122
Tel:    (213) 933-2330
Fax:    (312) 884-7352
william@amintalati.com
matt@amintalati.com

Attorneys for Defendant Game Time Supplements, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HELEMS, on behalf of all those similarly situated, | Case No.  22-cv-1122-L-AHG |
| Plaintiff, | **DEFENDANT GAME TIME SUPPLEMENTS, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| vs. | |
| GAME TIME SUPPLEMENTS, LLC dba RSP NUTRITION, a Florida corporation, | Date:  November 14, 2022 |
| Defendant. | Time:  10:30 a.m. Hon. M. James Lorenz |

## I.    INTRODUCTION

The Opposition confirms Defendant's motion to dismiss should be granted. With respect to the dispositive issue of preemption, the Opposition is a study in misdirection: Plaintiff attempts to frame the issue as a "factual dispute," when in fact the issue is his failure to plead sufficient factual matter to avoid preemption. He has no response to the fact that the Complaint pleads only the *conclusion* that AminoLean is mislabeled under each of the Five Methods. He does not dispute the Complaint's failure to allege that AminoLean contains any grams of total fat or protein, or any more than <1 gram of total carbohydrate. He therefore fails to allege plausibly—let alone with particularity—that application of the 4, 4, 9 method (a matter of second-grade math) yields any amount of calories that cannot be declared as zero under 21 C.F.R. 101.9(c). His claims are preempted.

For these and the other independent reasons discussed below, the Motion to Dismiss should be granted.

## II.    ARGUMENT

### A.    Plaintiff Lacks Standing to Pursue Injunctive Relief.

On standing to pursue injunctive relief, Plaintiff effectively concedes. He does not dispute that, to allege standing, the "threatened injury must be certainly impending to constitute injury in fact, and . . . allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citations omitted). He also does not dispute that his Complaint does not include any allegation that he intends, or even desires, to purchase AminoLean again. This is dispositive.

Furthermore, even had Plaintiff alleged an intention or desire to purchase the products again, he would still not face any "certainly impending" threatened injury. In his Opposition, he does not even try to dispute that even if he wanted to purchase AminoLean in the future, he now knows the product contains calories simply by seeing the product has 5 grams of amino acids per serving (*see* Dkt. 1, ¶¶ 28-29). *See Jackson v.*

1

*General Mills, Inc.*, No. 18cv2634-LAB (BGS), 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020).

Plaintiff cites *Vinluan-Jularbal v. Redbubble, Inc.*, No. 2:21-cv-00573, 2021 WL 4286539 (E.D. Cal. Sept. 21, 2021), but the case is inapposite. In *Vinluan-Jularbal*, the plaintiff alleged she would make future online purchases of clothing from the defendant if she could be assured the clothing was not counterfeit. *Id. at* *2. Here, by contrast, the Complaint does not allege Plaintiff wants to purchase AminoLean again. Furthermore, it is plausible a consumer could not know whether a future clothing item purchased online is counterfeit until after the consumer purchases it and receives it. No such situation exists here, where Plaintiff alleges he knows AminoLean and amino acids (according to him) contain calories.

### B.    Federal Law Preempts Plaintiff's Claims.

Attempting to avoid preemption, Plaintiff first distracts with arguments about website statements, then mistakenly claims FDA guidance supposedly "clarified" the applicable regulation. When he finally gets to the issue at hand—that is, whether the Complaint contains sufficient factual allegations to establish the zero-calorie label claim is inaccurate under *all* five methods (21 C.F.R. § 101.9(c))—he obfuscates by falsely claiming Defendant wants the Court to resolve factual disputes. But the issue is whether Plaintiff has pled sufficient facts to avoid preemption—an issue that does not require the resolution of any factual disputes. Defendant will address each of these points in turn.

### 1.    Plaintiff's "website" argument is inapposite.

Plaintiff contends that the NLEA's preemption provisions apply only to labeling, not to marketing statements made elsewhere, such as on a website. For two reasons, this contention does not help him. First, Plaintiff concedes NLEA preemption *does* apply to labeling, and he concedes the Complaint brings claims based on AminoLean's labeling. Thus, even assuming Plaintiff stated any claims based on website statements, that would not save from dismissal any claims based on the labeling.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Second, it is irrelevant whether website statements can be preempted because, regardless of preemption, Plaintiff does not state any valid claim based on any website statement. While he alleges websites have made statements that AminoLean contains zero calories (Dkt. 1, ¶¶ 23, 25), he never alleges that he even saw, let alone relied upon, any such website statement before making his purchase. He alleges he purchased AminoLean on Amazon, but he never alleges what statements (if any) *he* relied upon on Amazon.com before making his purchase. (Id. ¶  6.) His contention that Defendant's preemption arguments do not apply to website-based claims is a red herring.

### 2.      Plaintiff's FDA "guidance" arguments lack any merit.

Unable to dispute 21 C.F.R. § 101.9(c)'s plain language, which clearly sets forth the five methods from which manufacturers may choose to determine calories per serving, Plaintiff claims the FDA has issued "interpretive guidance" supposedly clarifying the "scope" of section 101.9(c). This contention lacks any merit.

First, Plaintiff never identifies what language in section 101.9(c) needs "clarifying." Section 101.9(c)(1)(i)'s meaning is plain: caloric content may be calculated by any of the five methods. *See* 21 C.F.R. § 101.9(c)(1)(i); *Burke v. Weight Watchers Intern., Inc.*, 983 F.Supp.2d 478, 483 (D.N.J. 2013) (section 101.9(c) "explain[s] that the 'total number of calories' can be calculated by using one of the five methods" and a claim is preempted unless "*all* of the Five Methods yield a calorie value greater than" the safe harbor) (emphasis added).

Second, the guidance Plaintiff cites does not help him anyway. He states that FDA guidance instructs "manufacturers to report 'total calories' separate and apart from calories from sources such as fat on a dietary supplement label." (Dkt. 11, p. 9:16-19.) That point is a non sequitur, having nothing to do with *how* to calculate total calories. In fact, in the guidance document Plaintiff cites, the FDA simply states, "Total calories . . . must be listed when they are present in measurable amounts. A measurable amount is an amount that exceeds the amount that can be declared as 'zero' in the nutrition label of

- 3 -

conventional     foods,     *as     specified     in     21     C.F.R.     101.9(c).*"
https://www.fda.gov/food/dietary-supplements-guidance-documents-regulatory-
information/dietary-supplement-labeling-guide-chapter-iv-nutrition-labeling#4-6
(emphasis added). In other words, this guidance confirms that if any method permitted
by section 101.9(c) yields a measurable calorie count that is less than five calories per
serving, the total calories can be declared as zero. *See* 21 C.F.R. § 101.9(c)(1)(ii).

The only other FDA guidance cited by Plaintiff is the "Frequently Asked
Questions" document cited in paragraph 27 of Plaintiff's Complaint
(https://www.fda.gov/media/99158/download). Plaintiff suggests that because the
guidance document includes an exemplar supplement facts panel for an amino acid-based
product that declares 15 calories per serving, the AminoLean label must also state more
than zero calories per serving. But Plaintiff is either missing the point or willfully refusing
to confront it: the guidance document does not state *which* of the five methods (if any)
was used to calculate the 15 calories per serving. It also does not state that *all* Five
Methods resulted in 15 calories per serving. If the manufacturer of the product reflected
in the exemplar chose to use the bomb calorimetry method, for example, that may have
resulted in 15 calories per serving. But that does not mean all Five Methods would yield
the same result.  In short, the guidance does not modify section 101.9(c) in the least.

Plaintiff claims *Metague v. Woodbolt Distribution, LLC*, No. 8:20-cv-02186-PX,
2021 WL 2457153 (D. Md. June 16, 2021), "looked to" the same FAQ guidance he now
touts in deciding Metague's claims were not preempted. But in *Metague*, after mentioning
the FAQ guidance, the court merely stated the obvious: a dietary supplement label must
list "the calories per serving." *Id.* at *2. The court did not state the FAQ guidance itself
*changed* the way calories per serving may be calculated. To the contrary, the court
affirmed that "[t]otal calories per serving must be calculated using one of the six specific
FDA-approved methods." *Id.* at *1. *Metague*, of course, did not even attempt to identify
*which* method was used to determine the calories per serving in the exemplar.

- 4 -

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

Instead, *Metague*'s conclusion that the plaintiff's claims were not preempted was based on something more mundane: the court found the plaintiff had adequately alleged facts establishing he had tested the defendant's supplement under *each* of the five methods, and *all* five methods yielded calorie counts exceeding the label claim by greater than 20%. *Id.* at *2. "[T]he Amended Complaint makes plausible that under every FDA-approved method for calculating calorie content, XTEND contains substantially more than the '0 calories' per serving touted on the labeling." *Id.* at *4.

*Metague* and common sense lead to the reason Plaintiff's claims are preempted here: he does *not* adequately allege facts establishing that under every FDA-approved method, AminoLean contains more than the 0 calories per serving stated on the label, as discussed below.

### 3. Plaintiff pleads only the insufficient *conclusion* that every FDA-approved method yields five calories or more.

It is telling that in his Opposition, Plaintiff completely ignores the following simple points made in Defendant's moving papers: (1) the Complaint does not allege that AminoLean contains any total fat; (2) the Complaint does not allege that AminoLean contains any more total carbohydrate than stated on the supplement facts panel (i.e., less than one gram); and (3) the Complaint does not allege the presence (or amount) of *any* protein in AminoLean. By failing even to address these points, he concedes them. He also admits FDA regulations do not permit manufacturers to classify individual amino acids as protein, and he does not dispute the only way the 4, 4, 9 method could result in five calories or more here would be if he counts individual amino acids as protein. Therefore, he has failed to plead "sufficient *factual* matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted, emphasis added). That failure is even more problematic here, where Plaintiff's claims sound in fraud and must also be pled with specificity. *See Kearns v. Ford Motor*

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1   *Co.*, 567 F.3d 1120, 1123 (9th Cir. 2009); *Watkins v. MGA Entertainment, Inc.*, 550

2   F.Supp.3d 815, 833 (N.D. Cal. 2021).

3         Having failed to plead any facts that AminoLean contains total fat or protein, or

4   contains any more than <1 gram of total carbohydrate, he fails to allege plausibly (let

5   alone with Rule 9(b) particularity) that the 4, 4, 9 method results in any calories exceeding

6   the amount that can be declared as zero under 21 C.F.R. § 101.9(c)(1)(ii).

7         Contrary to Plaintiff's assertion, this does not require "resolution" of any factual

8   disputes. Had he plausibly alleged, for example, that AminoLean contains some amount

9   of total fat, total carbohydrate and/or protein that would yield five or more calories per

10  serving under the 4, 4, 9 method (a method which is simple, second-grade math), and had

11  Defendant then disputed the amounts of total fat, total carbohydrate or protein alleged by

12  Plaintiff, that would be a factual dispute. But no such thing has happened here.[1]

13        At bottom, Plaintiff just wants the Court to accept his *conclusion* that "[u]nder any

14  of the FDA's relevant Five Methods, the Product is mislabelled[.]" (Dkt. 1, ¶ 34.) That is

15  a "formulaic recitation." *Iqbal*, 556 U.S. at 681. He pleads no factual content whatsoever

16  addressing any of the Five Methods other than bomb calorimetry. (*See* Dkt. 1, ¶¶ 30-34.)

17  This case is like *Burke*, not *Metague*. Plaintiff's label-based claims are preempted because

18  he has not pled facts plausibly establishing that he tested AminoLean "using every one

19  of the Five Methods." *Burke*, 983 F.Supp.2d at 483. He also has failed to plead such facts

20  with particularity, as required for his claims sounding in fraud.

21  _____

22  [1] Plaintiff cites *XpandOrtho, Inc. v. Zimmer Biomet Holdings, Inc.*, No. 3:21-cv-00105-
    BEN-KSC, 2022 WL 801743 (S.D. Cal. 2022), for the notion that application of the 4, 4,

23  9 method would require "in-depth analysis of . . . highly technical documents." His
    citation to *XpandOrtho* makes no sense, as *XpandOrtho* did not involve the 4, 4, 9 method

24  (or 21 C.F.R. 101.9(c)), but rather was a trade secret case concerning soft tissue balancing

25  during total knee arthroplasty. *Id.* at *1-2. In *XpandOrtho*, the defendants wanted the
    court to consider, on a motion to dismiss, scholarly articles, patent applications, a user

26  manual, and other documents to determine whether the trade secrets were not secret. *Id.*

27  at *20. Here, Defendant merely asks the Court to consider the Complaint's allegations.

28

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

**C.     Plaintiff Fails to State Any Claims for Equitable Relief.**

In his Opposition, Plaintiff does not even try to explain how his legal remedies are inadequate. He also does not identify *any* allegations in the Complaint establishing that his claim for damages is an inadequate remedy. Instead, he merely asserts he pled a claim for restitution "in the alternative" just "in case" discovery reveals that an adequate remedy at law does not exist. (Dkt. 11, p.15.) In support, he cites only cases pre-dating *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020).

Following *Sonner*, courts have repeatedly held the issue is not whether a plaintiff can plead claims in the alternative, but whether the plaintiff has pled a valid claim for equitable relief in the first place. "[A] party seeking equitable relief must specifically plead the inadequacy of monetary damages in federal court." *Martinez v. Ford Motor Company*, No. 22-cv-1082-MMA (BGS), 2022 WL 14118926, at *8 (S.D. Cal. Oct. 24, 2022). In *In re California Gasoline Spot Market Antitrust Litigation*, No. 20-cv-03131-JSC, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021), the court explained: "Plaintiffs' citation to a pre-*Sonner* case for the proposition that they are permitted to plead alternative claims for relief is unavailing. Several courts have rejected this same argument." *Id.* at *8. Similarly, in *In re: Macbook Keyboard Litigation*, the court observed that "[t]he question is not whether or when Plaintiffs are required to choose between two available inconsistent remedies, it is whether equitable remedies are available to Plaintiffs at all" and "the question is not premature on a motion to dismiss. No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *2 (N.D. Cal. Oct. 13, 2020); *accord Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421, 2021 WL 2024860, at *7 (C.D. Cal. May 1, 2021). Plaintiff has failed to state any claim for equitable relief.

**D.     The FDUTPA Does Not Apply to Plaintiff's California Purchase.**

Plaintiff does not allege he suffered any injury in Florida. Nevertheless, he cites *Millenium Communicatoins & Fulfillment, Inc. v. Office of Attorney General*, 761 So.2d 1256 (Fla. Dist. Ct. App. 2000), and *Renaissance Cruises, Inc. v. Glassman*, 738 So.2d

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

436 (Fla. Dist. Ct. App. 1999), for the proposition the FDUTPA applies extraterritorially to his California purchase. But as recognized by Judge Fisher in *Diamond Resorts U.S. Collection Development, LLC v. Pandora Marketing, LLC*, No. CV 20-5486 DSF, 2020 WL 8768056 (C.D. Cal. 2020), the most recent Florida appellate rejected the same argument made by Plaintiff here. *Id.* at *7. Specifically, in *Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090 (Fla. Dist. Ct. App. 2003), the court distinguished *Renaissance*, explaining that case involved a common injury that occurred *in Florida*, and there was also a forum selection clause providing that Florida courts would have jurisdiction. 837 So.2d at 1094. *Hutson* also specifically explained that *Millenium* does not support application of the FDUPTA to the claims of out-of-state consumers who suffered their injuries *outside* Florida. *Id. Hutson* held that in a case involving allegedly misleading marketing of a consumer product nationwide, "[t]he alleged wrong was committed, and the damage done, at the site of the sale of [the] products; that is, in the various states where members of the purported class made their purchase" and the FDUPTA would not apply to the out-of-state purchases. *Id.*[2]

### E.    The Unjust Enrichment Claim Fails as a Matter of Law.

While Plaintiff admits unjust enrichment is not a cause of action, he cites *Astiana v. Hain Celestial Grp. Inc.*, 783 F.3d 753 (9th Cir. 2015) for the proposition this Court can construe his claim as one for restitution based on quasi-contract. But restitution based on quasi-contract is an *equitable* remedy. *City of Oakland v. Oakland Raiders*, 83 Cal.App.5th 458, 478 (2022). As already explained, Plaintiff cannot pursue any

---

[2] Plaintiff's reliance on *In re Flonase Antitrust Litigation*, 692 F.Supp.2d 524 (E.D. Pa. 2010), is also misplaced. There, "several plaintiffs alleged that they personally suffered injury in Florida through their purchases and/or reimbursements of Flonase" and the named plaintiffs "d[id] not seek to apply Florida law to plaintiffs who suffered no injury in Florida." 692 F.Supp.2d at 538. Here, the exact opposite is true:  Plaintiff does not allege he personally suffered any injury in Florida, and he seeks to apply the FDUTPA to a nationwide class. (Dkt. 1., p.14.). *Bank of America, N.A. v. Zaskey*, No. 9:15-cv-81325, 2016 WL 2897410 (S.D. Fla. May 18, 2016), also does not help Plaintiff because it relied on *Millenium*, which *Hutson* explained does not support application of the FDUTPA to consumer purchases occurring outside Florida. 837 So.2d at 1094; *see also Diamond*, 2020 WL 8768056, at *7.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

equitable claim because he has not alleged his legal remedies are inadequate.

### F.    Plaintiff Does Not Allege Actual Reliance.

Plaintiff does not dispute that the CLRA, FAL and UCL all require actual reliance, or that because each of those claims sound in fraud, he must meet Rule 9(b)'s particularity requirements. Instead, he asserts he "adequately" pled reliance, but the Complaint paragraphs he cites instantly reveal the fallacy.

First, Plaintiff cites paragraphs 7 and 8 of the Complaint. (*See* Dkt. 11, p.19:27-28.) Paragraph 7 does not include any allegation that Plaintiff read the zero calories representation before purchase. (Dkt. 1, ¶ 7.) Paragraph 8 also says nothing about whether Plaintiff actually read and relied upon the zero-calorie statement before purchasing *AminoLean*. Rather, Paragraph 8 is a vague, general statement that he "relies on supplements' label claims and consumes foods, drinks, and supplements with intentionality." (*Id.*, ¶ 8.) That general assertion is the antithesis of Rule 9(b) particularity.

Second, Plaintiff cites paragraphs 45 and 46. (*See* Dkt. 11, p.20:5-6.) But far from alleging he read and relied upon the zero-calorie statement before purchase, those paragraphs merely allege that "consumers including Plaintiff *would* reasonably understand Defendant's statements to mean that each Products [sic] contained zero calories" and that "consumers including Plaintiff would not have purchased the Products from Defendant if the truth about the Products' calorie content were known." (Dkt. 1, ¶¶ 45-46 [emphasis added].) Whether the purported "truth" was "known" to Plaintiff says nothing about whether he read and relied upon the zero-calorie statement before purchase.

Finally, Plaintiff cites paragraph 48's allegation that "Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury." (Dkt. 1, ¶ 48.) This conclusory assertion is a "formulaic recitation" not even "entitled to be assumed true" under Rule 8. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). It is not a particularized factual allegation that Plaintiff actually relied on the calorie statement before purchase.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*See Watkins,* 550 F.Supp.3d at 833. He states no CLRA, UCL or FAL claim.

**G.    The Unjust Enrichment Claim is Not Susceptible to Class Treatment.**

The Opposition proceeds as if Defendant argued the unjust enrichment claim cannot proceed as a nationwide class because of *variations* in states' laws. But Defendant never made that argument at all. Defendant's motion is based on a fundamentally different point: unjust enrichment claims—*regardless* of variations in state law—are not susceptible of resolution on a class-wide basis. Plaintiffs make no effort to challenge that point; he does not cite *any* state's law suggesting otherwise.

*Bass v. Bowmar Nutrition, LLC*, is directly on point. There, the defendant moved to dismiss the class allegations on the unjust enrichment claim because it requires individualized factual analysis and is not susceptible to class treatment. *Bass v. Bowmar Nutrition, LLC*, No. 4:21-cv-00307, Slip. Op., pp. 19-20 (S.D. Iowa Feb. 8, 2022) (copy attached hereto as Exhibit 1). In granting the motion, the court explained:

> In response, the Consumers attempt to rebut an argument that Bowmar never made. They somehow read Bowmar's argument to be that variations in the law of unjust enrichment across all statements will require individualized determinations among class members. . . . They argue that Bowmar's challenge to certification of a class on the unjust enrichment claim is premature, because it should be raised at the time of class certification. . . . [¶] . . . The court finds the Consumers failed to address the ground on which Bowmar sought the dismissal or the striking of the class allegations on the unjust enrichment claim and that failure is fatal to class treatment of that claim. The Consumers waived any opportunity to argue that the requirements for individual proof on the unjust enrichment claims of each claimant do not make such a claim inappropriate for class treatment.

(*Id.*) Here, just as in *Bass*, Plaintiff responded to an argument Defendant never made, and he failed to respond to the ground on which Defendant actually seeks dismissal. The court should dismiss the class allegations as to unjust enrichment.

**III.    CONCLUSION**

For the foregoing reasons, the Court should grant the motion to dismiss.

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

2   Dated:  November 7, 2022                AMIN TALATI WASSERMAN, LLP
                                            William P. Cole
3                                           Matthew R. Orr

4

5                                           By:*/s/ William P. Cole*
                                               William P. Cole
6
                                            Attorneys    for    Defendant    Game    Time
7                                           Supplements, LLC

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         - 11 -
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S
COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.


*/s/William P. Cole*
William P. Cole

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT