# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE HELEMS, on behalf of all those similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GAME TIME SUPPLEMENTS, LLC dba RSP NUTRITION, a Florida corporation, <br><br> Defendant. | Case No.  3:22-cv-01122-L-AHG <br><br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND [ECF NO. 10]** |

Pending before the Court in this putative class action alleging deceptive advertising practices is Defendant Game Time Supplements, LLC.'s, Motion to Dismiss the Complaint. [ECF No. 10]. Plaintiff has filed a Response in Opposition. [ECF No. 11.] Defendant has filed a Reply. [ECF No. 12.]  The matter is submitted on the briefs without oral argument. *See* Civ. L. R. 7.1(d)(1).  For the reasons stated below, Defendant's Motion is GRANTED.

I.     FACTUAL BACKGROUND[1]

Plaintiff Jesse Helems ordered RSP Nutrition's AminoLean Pre-Workout powder ("AminoLean") blackberry pomegranate flavor on or about May 13, 2022. (Compl. at ¶ 6). Plaintiff purchased AminoLean in order to maintain the substantial weight loss he achieved in 2016 when he dropped 160 pounds out of 300 through cardio-based fitness and careful tracking of his daily caloric intake.

Defendant Game Time Supplements, LLC dba RSP Nutrition ("Defendant" or "RSP Nutrition"), is a Florida corporation with its principal place of business in that state. RSP Nutrition manufactures "pre-workout" nutritional powders including AminoLean. These dietary supplements are meant to boost energy and encourage muscle growth, workout recovery, and weight loss. RSP Nutrition states on the front and back labels of AminoLean, and in advertising materials, that these Products contain zero calories per serving.

Plaintiff claims that AminoLean contains between 20 to 30 calories per serving, as measured by all the relevant methods that the federal Food and Drug Administration ("FDA") uses to estimate caloric content, therefore, Defendant makes deceptive statements and omits material relevant information from its labels and advertising material in order to deceive consumers who are seeking low-calorie products for weight loss and maintenance. Plaintiff contends that RSP Nutrition's zero-calorie representations are thus in direct violation of FDA guidance for labeling calories under 21 C.F.R. § 101.9(c) and state law. Through this action, Helems seeks to represent a class of individuals who purchased AminoLean and seeks damages, injunctive relief, and attorneys' fees and costs.

//

---

[1] The majority of the facts are taken from the Complaint and for purposes of ruling on the Defendant's Motion to Dismiss, the Court assumes the truth of all plausible non-conclusory allegations in the Complaint. *Grabowski v. Ariz. Bd. Of Regents*, 69 F.4th 1110 (9th Cir. 2023).

## II. Procedural Background

On August 1, 2022, Plaintiff Jesse Helems ("Helems") filed the Complaint in this putative class action alleging the following claims: (1) violation of the Florida Deceptive and Unfair Trade Practice Act ("FDUTPA") Fla. Stat. 501.204, et seq. (nationwide class); (2) violation of the "unfair" prong of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, et seq. (California subclass); (3) violation of the UCL's "fraudulent" prong (California subclass); (4) violation of the UCL's "unlawful" prong (California subclass); (5) violation of California's False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, et seq. (California subclass); (6) violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, et seq. ("CLRA") (California subclass); and (7) unjust enrichment. (Compl. [ECF No. 1.])

Defendant Game Time Supplements ("Game Time") filed the present Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 14, 2022. (Mot. [ECF No. 10.]) On October 31, 2022, Plaintiff filed a Response in Opposition to the Motion. (Oppo. [ECF No. 11.]) On November 7, 2022, Defendant filed a Reply. (Reply [ECF No. 12.]) On July 17, 2023, Defendant filed a Supplemental Document citing a recently decided case. (Supp. Doc. [ECF No. 13.]) On September 1, 2023, Defendant filed a Notice of Supplemental Authority. (Supp. Auth. [ECF No. 14.])

## III. Legal Standard

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must assume the truth

of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir. 1996). A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id*.

IV. DISCUSSION

A. Standing

Under Article III of the U.S. Constitution, a court may only adjudicate "cases" and "controversies." *Davidson v. Kimberley-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 20187). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff must demonstrate injury-in-fact, causation, and redressability to establish standing. *Id*. at 560-61. An injury-in-fact must be "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). A plaintiff must demonstrate that he is likely to suffer future injury from defendant's conduct to show standing to pursue injunctive relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). A "threatened injury must be certainly impending to constitute injury in fact,

and …allegations of possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)(internal citations omitted).

Defendant argues that the Complaint does not include any assertion that Plaintiff intends to purchase AminoLean in the future therefore he has not established a threat of actual or imminent harm to demonstrate standing. (Mot. at 6). Because Plaintiff now knows that AminoLean has 5 grams of amino acids per serving, which purportedly means it is not zero calorie per serving, an injunction would serve no meaningful purpose as to Plaintiff. (*Id.*)

In response, Plaintiff claims that he has standing and relies on *Davidson* for the proposition that a consumer who was previously deceived by false advertising may still have standing to pursue an injunction even after the consumer knows that the advertising was false at the time of purchase because the consumer may suffer a future harm. (Oppo. at 15).

In the present case Plaintiff has not asserted an ongoing interest or intention to purchase AminoLean in the future. As a result, Plaintiff has failed to establish standing for his injunctive relief claim. *See also, Scheibe v. Performance Enhancing Supplements*, LLC., No. 23-cv-0219-H-DDL, 2023 WL 3829694, at *4 (S.D. Cal. June 5, 2023)(no standing because plaintiff failed to allege intention to purchase products again.) The Court finds *Davidson* distinguishable because there the plaintiff alleged that she had the desire to buy flushable wipes manufactured by the defendant again but only if it was possible to ensure the wipes were truly flushable. *Id*. at 963. The *Davidson* Court relied upon this representation by plaintiff, and determined that:

> We are required at this stage of the proceedings to presume the truth of Davidson's allegations and to construe all of the allegations in her favor. (Internal citations omitted) Though we recognize it is a close question, based on the FAC's allegations, we hold that Davidson adequately alleged that she faces an imminent or actual threat of future harm due to Kimberly–Clark's false advertising. Davidson has alleged that she desires to purchase Kimberly–Clark's flushable wipes."

*Id*. at 971 (citations omitted). Because Plaintiff has not alleged that he would like to purchase AminoLean again, he has failed to allege that he faces an imminent or actual threat of future harm due to Defendant's false advertising. Accordingly, Defendant's Motion to Dismiss is GRANTED on the issue of standing.

### B. Federal Law Preemption

Under the Federal Food, Drug and Cosmetics Act ("FDCA"), the nutrition labeling of food must provide the total number of calories per serving, if any. 21 U.S.C. § 343(q)(1)(C). "To avoid a patchwork quilt of conflicting state labeling laws, the FDCA includes a preemption provision that establishes a national and uniform standard for certain labeling statements." *Greenberg v. Target Corp.*, 985 F.3d 650, 655 (9th Cir. 2021). "Federal law preempts state law to the extent that state law imposes a requirement on nutrition content claims governed by § 343(r)(1) that are not identical to the requirements set forth in § 343(r) generally." *Fernandez v. Atkins Nutritionals, Inc.*, 17-cv-1628-GPC-WVG, 2018 WL 280028 *5 (S.D. Cal Jan. 3, 2018); *Burke v. Weight Watchers*, 983 F.Supp.2d 478, 483 (D.New Jersey 2013)(quoting 21 U.S.C. § 343-1(a)(4)). This express preemption provision applies unless "the state law seeks to impose liability consistent with Section 343(q)." *Id.*

Regulations of the U.S. Food and Drug Agency ("FDA") 21 C.F.R. § 101.9(c)(i)(1) permit the use of any of "Five Methods" of determining the caloric content of foods. The actual calories per serving of the Product cannot exceed 20 percent of the label claim per § 101.9(g)(5). The "Five Methods" include (1) the Atwater method; (2) a method that assigns 4, 4, and 9 calories per gram for protein, total carbohydrate, and total fat, respectively; (3) a method that assigns 4, 4 and 9 calories per gram for protein, total carbohydrate less the amount of insoluble dietary fiber, and total fat, respectively; (4) data for specific food factors for particular foods or ingredients approved by the Food and Drug Administration (FDA); or (5) bomb calorimetry data. 21 C.F.R. § 101.9(c). Section 101.9(c) provides no restrictions or limitations on what method a company may

choose to use for its particular products. *See* 21 U.S.C. § 101.9(c). Under any of the Five Methods, any amount less than five calories per serving may be considered zero calories. *Id.* § 101.9(c)(1)(ii). A "safe-harbor" provision also affords companies a 20% margin of error on the total number of calories measured by any of the Five Methods. 21 C.F.R. § 101.9(g)(5).

Defendant makes two arguments in support of preemption. First, Defendant contends that Plaintiff has not alleged well-pleaded factual content establishing mislabeling under all of the Five Methods, but instead only asserts that counsel had a laboratory conduct bomb calorimetry analysis which is just one of the Five Methods. (Mot. at 10). Second, Defendant argues that the only way the 4, 4, 9 method could result in the calories per serving alleged by Plaintiff would be if Plaintiff is counting the individual amino acids as "protein," even though the FDA mandates that such amino acids shall not be treated as protein. *(Id.* at 10-11).

Plaintiff responds that he has sufficiently alleged in the Complaint that AminoLean fails to satisfy all of the FDA approved methods for calculating caloric content by claiming "[u]nder any of the FDA's relevant Five Methods, the Product is mislabelled [sic]…" (Oppo. at 13). He further argues that his claims regarding the website advertising are not preempted because the NLEA's preemption provision applies only to labeling and not to marketing statements made elsewhere. (*Id*. at 7). Regarding calories from amino acids, Plaintiff contends that Defendant misrepresented the calories in AminoLean that are associated with amino acids. (Oppo. at 9-10). According to Plaintiff, a label must show calories from amino acids along with other ingredients, but here, Defendant failed to include that information on the labeling of AminoLean. (*Id*. at 12).

While a plaintiff is generally not required to submit evidence to support allegations in a complaint, those allegations must be at least plausible to survive a motion to dismiss. Here, Plaintiff plausibly alleges that he had a laboratory conduct bomb

calorimetry analysis on AminoLean and those results indicated that AminoLean contained about 30 calories per serving and about 2,140 calories in the entire container. (Compl. ¶¶ 30-31). However, bomb calorimetry is only one of the approved Five Methods. Plaintiff argues he has explicitly pleaded that he analyzed and evaluated AminoLean in accordance with each of the Five Methods identified by the FDA regulations and has determined that every result showed "that AminoLean exceeds the caloric value on the label by more than 20 percent." (Oppo. at 13). However, in the Complaint, Plaintiff states only that "Under any of the FDA's relevant Five Methods, the Product is mislabelled [sic]. . ." (Compl. at § 34). This conclusory statement that AminoLean is mislabeled under any of the Five Methods without more is insufficient under *Iqbal*. There is no indication that AminoLean was subjected to testing under all of the methods, but instead, Plaintiff rests his allegations on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" and asks the Court to assume the products are mislabeled under all Five Methods. *Iqbal*, 556 U.S. at 678.

Plaintiff's reliance on *Metague v. Woodbolt Distribution, LLC.*, No. 8:20-cv-02186-PX, 2021 WL 2457153, at *1 (D.Md. June 16, 2021) is unavailing. First, Metague is not binding on this Court because it is a decision from the United States District Court of Maryland.[2] Second, the plaintiff in *Metague* alleged that he conducted independent research on the product, XTEND, using each of the five FDA methods applicable to measuring caloric content which revealed that XTEND exceeded the value represented by greater than 20% making it "misbranded." *Id*. at *2. Unlike in *Metague*, Plaintiff only alleged only that he conducted the bomb calorimetry method on AminoLean.[3]

---

[2] District court opinions are not binding on this Court. *See Camreta v. Green,* 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."). To the extent Defendant cites out-of-circuit appellate authorities, the Court finds them unpersuasive in the context of this case.

[3] Because the Court finds that the Plaintiff's caloric theory has not been pleaded with sufficiency, it does not reach Defendant's alternative arguments.

Plaintiff has failed to plead a sufficient factual basis for his claim that AminoLean is mislabeled under all of the approved FDA methods. Accordingly, the Court GRANTS Defendant's Motion to Dismiss Plaintiff's caloric labeling misrepresentation claim with leave to amend.

### C. Equitable Relief

"It is a basic doctrine of equity jurisprudence that courts of equity should not act ... when the moving party has an adequate remedy at law." *Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996). A plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020).

Defendant argues that Plaintiff's UCL and FAL claims (Claims 2 through 5), the unjust enrichment claims (Claim 7), and Plaintiff's claims for equitable relief under the CLRA and FDUTPA should be dismissed because Plaintiff has not alleged any set of facts which, if true, would show that an award of damages would not be an adequate remedy. (Mot. at 14). The CLRA and FDUTPA claims for actual damages are based on exactly the same alleged conduct as all of Plaintiff's claims for restitution and injunctive relief but Plaintiff fails to plead any facts which show that an award of damages would be inadequate. (*Id*.) Plaintiff counters that he has pleaded alternative relief under the UCL and FAL if he lacks an inadequate remedy at law. (Oppo. at 16).

Here, Plaintiff seeks to recover equitable remedies under the UCL and FAL, and actual damages along with equitable remedies under the CLRA and the FDUTPA. However, he has not alleged that damages are inadequate. Instead, he argues that he is pursuing alternative relief *if* he lacks an adequate remedy at law, but under *Sonner* a plaintiff at a minimum must state they have *no* adequate remedy at law, even at the motion to dismiss stage. See *Sonner*, 971 F.3d at 844; *McKinney v. Corsair Gaming, Inc.,* No. 22-CV-00312-CRB, 2022 WL 2820097, at *10 (N.D. Cal. July 19*,* 2022).

Because Plaintiff failed to assert that he had no adequate remedy at law, the Court **GRANTS** Defendant's Motion to Dismiss on Plaintiff's equitable restitution claims under the UCL, CLRA, FAL and FDUTPA.

*D. FDUTPA Claim*

FDUTPA provides a cause of action for "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]." Fla. Stat. § 501.204(1) (alterations added). Florida appellate courts have limited the extraterritorial reach of the FDUTPA. *See Hutson v. Rexall Sundown, Inc.*, 837 So.2d 1090, 1094 (Fla. Dist. Ct. App. 2003) (holding that the FDUTPA did not protect nonresident customers of products sourced from Florida).

Defendant argues that the Court should dismiss Plaintiff's FDUTPA claim because he alleges his purchase took place in California, not Florida, and the FDUTPA does not apply extraterritorially to purchases made in California. (Mot. at 15). In response, Plaintiff argues that the plain language of the statue does not confine the provisions of FDUTPA to commercial transactions involving only Florida residents, citing *Millenium,* 761 So.2d at 1261.

In the Complaint, Plaintiff asserts that he is a citizen of California who purchased AminoLean from Defendant, a Florida corporation, using the third-party website Amazon.com and that Defendant advertises the product through marketing, sells it to consumers residing in this district through their own website and through third-party e-commerce sites, and ships the products to consumers in this district. (Compl. at ¶16). In *Hutson*, as in the present case, the alleged deceptive labeling was included on purchases made nationwide, therefore, the damage was arguably done at the site of the sale. *Hutson*, 837 So.2nd 1094. Because the alleged damage was done in California, the reasoning in *Hutson* is controlling. Accordingly, the Court **GRANTS** Defendant's motion on this ground.

### E. Unjust Enrichment

"The equitable doctrine of unjust enrichment 'is based on the idea that "one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution be made, and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly." ' " *City of Oakland v. Oakland Raiders*, 83 Cal.App.5th 458, 478 (2022). There is no unjust enrichment cause of action in California, instead there is only a claim for restitution. *DeHavilland v. FX Networks, LLC.*, 21 Cal.App.5th 845, 870 (Cal. Ct. App. Mar. 26, 2018). When a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal.App.4th 221 (2014). However, restitution based on quasi-contract is an equitable remedy, subject to the same requirements as other equitable remedies. See generally, *Oakland Raiders*, 83 Cal.App.5th at 478.

According to Defendant, Plaintiff's unjust enrichment claim fails as a matter of law because Plaintiff does not allege facts establishing his legal remedies are inadequate, and because California does not recognize a separate cause of action for unjust enrichment. (Mot. at 15). Plaintiff argues in response that the Ninth Circuit has recognized a claim for unjust enrichment can be construed as a quasi-contract claim seeking restitution. (Oppo. at 19).

Whether Plaintiff titles the cause of action "unjust enrichment" or "quasi-contract" it remains a cause of action for equitable relief, and as noted above, he has not alleged that his legal remedies are inadequate, therefore, Plaintiff cannot pursue an

equitable claim. For this reason, Defendant's Motion to Dismiss the unjust enrichment claim is GRANTED.[4]

### F.  CLRA, UCL, and FAL Claims- Actual Reliance

"In alleging fraud ... a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To meet Rule 9(b) particularity requirement "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,* 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and alterations omitted). Furthermore, claims sounding in fraud must also meet *Iqbal's* plausibility standard. *Id*. "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103–04 (9th Cir. 2003).

Defendant argues that Plaintiff's CLRA, UCL, and FAL claims require actual reliance but Plaintiff has not alleged specific facts establishing he actually relied on the zero calorie claim in deciding to purchase AminoLean. (Mot. at 16). Plaintiff counters that he sufficiently alleged in the Complaint that he relies on supplements' label claims, he understood Defendant's statements to mean that AminoLean contained zero calories as represented and he reasonably relied on those statements such that he would not have purchased the products otherwise. (Oppo. at 19-20).

---

[4] Defendant contends that the Court should dismiss the class allegations as to this claim because individualized determinations on liability are required making it unsuitable for class-wide resolution. (Mot. at 17-18). In response, Plaintiff contends that Defendant has not provided analysis of the variations in the law of unjust enrichment of the states that would require individualized determinations among class members. (Oppo. at 21). Moreover, Plaintiff argues that Defendant's challenge is better suited for the class certification stage making it premature at this time. (*Id.* at 22).
In light of the finding that the unjust enrichment claim is denied, the Court need not reach Defendant's request to dismiss the claim on these grounds.

Because Plaintiff's CLRA, FAL, and UCL causes of action are all grounded in fraud, the Complaint must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b). *Kearns*, 567 F.3d at 1125 ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Vess*, 317 F.3d at 1103–04.  Plaintiff has not sufficiently alleged reliance to support these claims. Plaintiff makes only general statements that consumers rely on labeling statements. In the Complaint he alleges "consumers including Plaintiff would reasonably understand Defendant's statements to mean that each Products[sic] contained zero calories as advertised and represented" (Compl. at ¶ 45) and that "[c]onsumers including Plaintiff would reasonably rely on Defendant's statements such that they would not have purchased the Products from Defendant if the truth about the Products caloric content were known, or would have only been willing to pay a substantially reduced price for the Products had they known that Defendant's representations were false and misleading" (*Id.* at ¶ 46).  Plaintiff also contends that "[c]onsumers including Plaintiff especially rely on the 'zero calorie" label claims made by food product manufacturers such as RSP nutrition, as they cannot confirm or disprove those claims simply by viewing or even consuming the Product." (*Id.* at ¶ 47).

Nowhere does Plaintiff state that he read the label on AminoLean and relied upon the representations of zero-calories when deciding to purchase the product. The lack of particularized factual allegations that he actually relied on the caloric statements prior to purchase is insufficient to meet the heightened pleading standard for a fraud claim under CLRA, UCL, or FAL. *Cafasso*, 637 F.3d at 1055. Defendant's Motion to Dismiss is GRANTED on these claims.

//

//

//

V.   *Conclusion and Order*

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss without prejudice and with leave to amend.

**IT IS SO ORDERED**

Dated:  September 14, 2023

_____
Hon. M. James Lorenz
United States District Judge